

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB 23  AM 6:55

LORETTA G. WHYTE
        CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL W. FITCH | CIVIL ACTION |
| VERSUS | NUMBER: 04-3411 |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY<br>ADMINISTRATION | SECTION: "R"(5) |

### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II and Part A of Title XVIII of the Social Security Act. (Rec. docs. 12, 14).

Michael Fitch, plaintiff herein, filed an application for DIB on January 30, 2002, alleging disability since November 1, 2001 due to a back injury. (Tr. pp. 42-44, 55). In his initial Disability Report, plaintiff described constant pain and permanent nerve damage in his left leg which prevented his being able to stand for an extended period of time as the cause of his inability to work.

____ Fee_____
____ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
____ Doc. No_____

(Tr. p. 55). Plaintiff's claim was denied initially on June 26, 2002. (Tr. p. 33).

Thereafter, in a timely fashion, plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ"). That hearing went forward on January 15, 2004 with plaintiff and his attorney in attendance. (Tr. pp. 132-50). On July 30, 2004, the ALJ issued a written decision finding plaintiff not disabled within the meaning of the Social Security Act and denied plaintiff his claim for Disability Insurance Benefits. (Tr. pp. 14-21).

Plaintiff timely requested review of the ALJ'S decision by the Appeals Council ("AC"). (Tr. p. 8). On October 22, 2004, the AC denied plaintiff's request and the ALJ's determination became the final decision of the Commissioner. (Tr. pp. 5-7). Plaintiff timely filed the instant civil action and this matter is properly before the Court pursuant to 42 U.S.C. §405(g).

In his cross-motion for summary judgment, plaintiff frames the issue for judicial review as "whether the decision by the ALJ that plaintiff retains the ability to return to work despite his medical condition" is supported by sufficient evidence in the record. (Plaintiff's memo, p. 2).

Relevant to the issue to be decided by the Court are the following findings made by the ALJ:

    1.  [t]he claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

   2.   [t]he claimant has not engaged in substantial gainful activity since the alleged onset of disability.

   3.   [t]he claimant's lumbar syndrome, status post L3/L4/L5 fusion with laminectomy, discectomy and cages is a "severe" impairment, based upon the requirements in the Regulations. (20 C.F.R. §404.1520(c)).

   4.   [t]his medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

   5.   [t]he undersigned finds the claimant's allegations regarding his limitation are not totally credible for the reasons set forth in the body of the decision (SSR 96-7p).

   6.   [t]he claimant has the following residual functional capacity: lift and carry ten pounds, sit for six hours in an eight-hour workday, and stand and/or walk for two hours in an eight-hour workday.

   7.   [t]he claimant is unable to perform any of his past relevant work.  (20 C.F.R. §404.1565).

   8.   [t]he claimant is a "younger individual." (20 C.F.R. 1653)

   9.   [t]he claimant has "a limited education." (20 C.F.R §404.1564).

   10.   [t]he claimant has a skilled work background.  The same result would be reached without regard to the skill level of the claimant's former work or to questions pertaining to transferability of work skills. (20 C.F.R. §404.1568).

   11.   [t]he claimant has the residual functional capacity to perform the full range of sedentary work.  (20 C.F.R. §404.1567).

   12.   [b]ased on an exertional capacity for sedentary work, and claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical Vocational Rule 201.25.

   13.   [t]he claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision.  (20 C.F.R. §404.1520(g)).

                                        (Tr. p. 20).

   Judicial review of the Commissioner's decision to deny DIB is

limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F. 2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB bears the burden of proving that he is disabled within the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as

4

the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. <u>Harrell</u>, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §404.1520, as follows:

    1.   an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

    2.   an individual who does not have a "severe impairment" will not be found to be disabled.

    3.   an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

    4.   if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.

    5.   if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). In determining whether there is

other work available that the claimant can perform, the Commissioner may rely exclusively on the Medical-Vocational Guidelines of the Regulations when the claimant suffers only from exertional impairments or when his non-exertional impairments do not significantly affect his residual functional capacity. Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990); Fraga, 810 F.2d at 1304. Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); Fraga, 810 F.2d at 1302.

At the administrative hearing which went forward on January 15, 2004, only the plaintiff appeared and gave testimony. Plaintiff, having been born on August 1, 1972, was thirty-one years old at the time of his hearing. He had a limited education, having graduated from the eighth grade, with no vocational or technical schooling. (Tr. p. 141). Plaintiff testified that he had been disabled from 1997, following an on-the-job injury. However, his physical condition worsened in April, 2002, following his being beaten by police officers while incarcerated. (Tr. p. 136).

Sometime during 2000, plaintiff underwent multi-level interbody fusions with cages and screws. (Tr. p. 135). At the time of the administrative hearing, plaintiff's only medication was Tylenol which he testified to taking multiple times during the day, trying not to exceed twelve pills in a twenty-four hour period.

6

(Tr. p. 136). He further medicated himself by using heat for his pain and going to the emergency room of the hospital if his pain became too great. (Tr. p. 140). Plaintiff advised that he had suffered a loss of function in his left leg which was numb and lacking in strength. (Tr. p. 137). In addition he complained of neck pain, radiating to his arm since the jail incident related above. (Tr. p. 140). Plaintiff's past work included working on shrimp and tugboats and in a crab factory. (Tr. p. 141).

When questioned as to his daily activities, plaintiff advised that he does not clean his house and does little cooking. (Tr. p. 142). He can don his shirt and pants but is unable to put his socks on without assistance. (Tr. p. 143). It appears that he does little, if any, grocery shopping, relying upon others to help in this regard. (Tr. p. 142). Plaintiff further advised that he had difficulty brushing his teeth and in getting to the hearing that day. (Tr. p. 143). His day consists of watching television in the main. (Tr. p. 145). Plaintiff cannot drive for too long a time and he wears a back brace. (Tr. pp. 144, 146). He also has trouble sleeping. (Tr. p. 141).

The gravamen of plaintiff's argument that the ALJ did not give proper weight to the evidence presented seems to center upon three issues: 1) that Dr. John Sweeney found plaintiff to be sufficiently restricted in his activities so as to severely limit his opportunities in the workforce; 2) that because of his being

further injured by jail deputies after the filing of his request for benefits, the ALJ should not have questioned plaintiff's testimony at trial as differing from his initial responses to agency questionnaires; and 3) that plaintiff's own testimony regarding his residual functional capacity should have been given ultimate weight.

A review of the report of Dr. Sweeney dated March 8, 2004, reflects that plaintiff had a full range of motion in his neck, shoulders, elbows, wrists and hands. Plaintiff was able to stand and walk on his heels and toes. Although the doctor noted that plaintiff wore a back brace and used a cane, he opined that "neither one appear to be medically necessary." Plaintiff had a full range of motion in his hips, knees and ankles. While the doctor acknowledged that plaintiff had objective evidence of a multi-level fusion, he noted that the fusion was solid and that the procedure seemed to have been successful. The doctor placed no restrictions upon plaintiff's use of his upper extremities. Nor did he restrict him from all work, noting that "sedentary or light work would be in his best interest". (Tr. pp. 130-131).

In addition, medical records generated by Dr. Christopher Cenac between November 27, 2000 and December 5, 2001 further document plaintiff's condition. Initially, Dr. Cenac noted that plaintiff had suffered a work-related accident on July 28, 1997. Thereafter, he had seen a "multitude of physicians" and undergone

8

a lumbar laminectomy and disc excision with posterior lumbar interbody fusion and cages at L3/4 and L4/5. The doctor noted at that first visit, in a communication to plaintiff's compensation carrier, that he would need eight months to one year to complete a full recovery from his injuries. (Tr. p. 97). By April 19, 2001, Dr. Cenac noted that plaintiff was nearing maximum medical improvement. (Tr. p. 92). On May 8, 2001, Dr. Cenac noted that the "patient has rather severe symptom magnification and illness behavior documented." (Tr. p. 91). Dr. Cenac declared on July 11, 2001 that maximum medical improvement had been achieved. (Tr. p. 89). By July 24, 2001, Dr. Cenac opined that plaintiff was "employable at the lite [sic] level with restrictions." (Tr. p. 88). Thereafter, Dr. Cenac saw plaintiff on two occasions, following his release from incarceration, discharging him from further treatment on December 5, 2001. (Tr. pp. 86, 87). The doctor, however, did not alter his opinion as to plaintiff's ability to work on any occasion after July 24th.

The remainder of the medical records pertinent to plaintiff indicate that he also consulted with Dr. Scott Haydel for back pain on April 26, May 7 and November 13, 2002. (Tr. pp. 101-02). While Dr. Haydel noted chronic back pain on the part of plaintiff and prescribed Ultram and Flexeril for his use, Dr. Haydel made no attempt to suggest that plaintiff could not engage in gainful employment.

The record reflects that there are medical visits documenting plaintiff's condition both before and after his altercation with jail deputies. At no point in time has any physician suggested that plaintiff could not perform work at some level. Accordingly, plaintiff's first argument that the ALJ improperly interpreted medical evidence is without merit.

Plaintiff's second argument, that the ALJ unfairly noted discrepancies between his hearing testimony and his preliminary statements to the agency in questionnaires, is likewise without merit. In his opinion, the ALJ, indeed, pointed out that plaintiff admitted to being able to do more when he filed his application than when he testified at the hearing. (Tr. p. 18).[1]/ The ALJ also relied heavily on the medical findings noted by the Court above and made a reasonable finding that "the claimant's daily activities are more restrictive than would be suggested by the medical evidence." (Id.). In reaching this conclusion, the ALJ noted Dr. Cenac's findings of symptom magnification and that Dr. Sweeney had opined that plaintiff's back brace and cane were not medically necessary. (Id.). The ALJ also dealt with the issue of plaintiff's pain in an acceptable fashion, noting that "pain constitutes a disabling condition when it is constant, unremitting and wholly unresponsive to treatment." Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994).

---

[1]/ An ALJ may properly take notice of the representations a claimant makes in the Administration's written questionnaires. Vaughn v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995).

10

In light of the fact that plaintiff's pain management regimen consisted of Tylenol, a heating pad and occasional, sporadic visits to the emergency room, according to plaintiff's own testimony, the ALJ was justified in determining that plaintiff's pain was not a disabling condition in and of itself.

Lastly, the ALJ clearly found that the testimony of the plaintiff was insufficient, in light of the other corroborative evidence, to overcome the opinions of the doctors which indicate that plaintiff can perform some work. While Dr. Cenac opined that plaintiff could perform light work, the ALJ found that he could perform at the sedentary level, i.e., that he had the residual functional capacity to "lift and carry ten pounds, sit for six hours in an eight-hour workday, and stand and/or walk for two hours in an eight-hour workday." (Tr. p. 18). The Court sees nothing in the record to indicate that the ALJ was incorrect in reaching this conclusion.

It has long been accepted jurisprudence that the responsibility for weighing the evidence and determining the credibility of witnesses' testimony and doctors' opinions lies with the ALJ in the first instance. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991). The evaluation of a plaintiff's subjective symptoms is a task particularly within the province of the ALJ for it was the ALJ who had the opportunity to observe the plaintiff, not the Court.

Harrell, 862 F.2d at 480. The ALJ may discredit a plaintiff's subjective complaints of pain and other limitations if he carefully weighs the objective medical evidence and articulates his reasons for doing so. Anderson v. Sullivan, 887 F.2d 630, 633 (5th Cir. 1989)(citing Abshire v. Bowen, 848 F.2d 638, 642 (5th Cir. 1988)). As noted above, the record reflects ample basis for the conclusion which the ALJ reached.

## RECOMMENDATION

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this _22nd_ day of February, 2006.

*Alma L. Chasez*
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE